UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY L. HAWKES,<br><br>      Plaintiff,<br><br>  vs.<br><br>HEWLETT-PACKARD COMPANY,<br><br>      Defendant. | Case No.: CV-10-05957-EJD<br><br>**ORDER GRANTING HEWLETT-PACKARD COMPANY'S MOTION FOR TRANSFER OF VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>(Re: Docket No. 26) |

     Plaintiff Peggy L. Hawkes ("Hawkes") has filed the present lawsuit in the Northern District of California, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). Defendant Hewlett-Packard Company ("HP") moves to transfer the action to the Eastern District of Virginia, pursuant to 28 U.S.C. § 1404(a). For the reasons discussed below, HP's motion to transfer venue to the Eastern District of Virginia is **GRANTED**.

Case No. 5:10-CV-5957 EJD             1
ORDER GRANTING HEWLETT-PACKARD COMPANY'S MOTION FOR TRANSFER OF VENUE

## I. BACKGROUND

This action was originally filed in the United States District Court for the Northern District of California, San Jose Division, on December 29, 2010 by Hawkes against HP, her former employer. Hawkes alleges two causes of action: (1) unlawful sex discrimination and retaliation in violation of Title VII; and (2) unlawful age discrimination and retaliation in violation of the ADEA. Compl. ¶ 1.

Hawkes is a former employee of HP who worked from her home office in Virginia Beach, Virginia as an Enterprise Account Manager ("EAM"). Hawkes became an employee of HP in 2002 when Compaq Computer Company, her employer at the time, merged with HP. Compl. ¶ 9. Hawkes worked for HP as an EAM in Defendant's U.S. Enterprise Sales – Mid Atlantic Technology Solutions Group since approximately 2002; she was promoted in 2006 to the position of EAM IV, the position in which she was employed at the time of her termination. Compl. ¶ 10. In her position as an EAM IV, Hawkes was under the supervision of Charles Bucknor, HP's Manager for its U.S. Enterprise Sales – Mid Atlantic 1H08 Technology Solutions Group. Compl. ¶ 11. Hawkes claims that Bucknor intentionally and systematically transferred her to low performance accounts, making it impossible for her to achieve her yearly quota. Compl. ¶ 12.

HP terminated Hawkes in October 2007. Compl. ¶ 13. Bucknor advised Hawkes of her termination via e-mail stating that Hawkes was subject to HP's Workforce Reduction Plan and that she was included in the Workforce Reduction Plan because her position was "no longer necessary." Id. Hawkes received no advance notification of her termination and was not provided an opportunity to renegotiate account assignments. Compl. ¶ 14. She claims that younger male employees were provided advance notification of termination, "including details of the impending workforce reduction and sales reorganization, and were given the opportunity to renegotiate account assignments." Id. Hawkes alleges that such failure to provide advance notification impaired her ability to find another position within HP. Id. Hawkes also claims that other similarly situated male employees who were younger than her and who were performing at a lower level were not terminated and remained as EAMs under Bucknor. Compl. ¶ 15. Hawkes

further alleges that neither she nor another female EAM were provided assistance by Bucknor nor offered another position within HP.  Id.

On November 19, 2007, Hawkes, by her counsel, notified Suzanne Guzman, a Human Resources Support Specialist with HP, of her concerns relating to age and gender discrimination with regard to the decision to terminate her employment.  Compl. ¶ 17.  Hawkes contends that HP was aware of Bucknor's discriminatory animus towards women and had counseled him regarding discriminatory practices prior to receiving Hawkes's complaint.  Id.  Having received no response to her complaint, Hawkes applied for the position of EAM IV with job grade S9H in Bucknor's group.  Compl. ¶ 17-18.  Hawkes requested assistance from Bucknor in obtaining a new position with HP; she claims that Bucknor refused to assist her, although he assisted other male employees in finding new employment.  Compl. ¶ 18.  HP ultimately filled this position with Rob Lavis, a younger male from a technical sales support group with no experience as an EAM.  Compl. ¶ 19.

Hawkes applied for approximately thirteen positions with HP during the redeployment phase of the Workforce Reduction Plan, during which time Hawkes was to be given priority consideration in seeking other jobs with HP pursuant to the Workforce Reduction Plan.  Compl. ¶ 21.  Hawkes was never contacted, interviewed for, or offered employment in any of these positions, despite her priority status and having raised the issues regarding potential discriminatory animus underlying her termination.  Id.

Hawkes alleges that HP acted with discriminatory animus in terminating her and failing to rehire her.  Compl. ¶ 22.  Hawkes further contends that HP subjected her to retaliation in response to her claims of discrimination on the basis of gender and age.  Id.  Hawkes argues that HP engaged in intentional discrimination with malice and reckless indifference to her federally protected rights.  Compl. ¶ 23.  HP asserts that Hawkes was terminated for performance issues and customer dissatisfaction.  Compl. ¶ 24.

Hawkes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 12, 2008.  Compl. ¶ 25.  The EEOC issued a Dismissal and

Notice of Rights letter dated October 1, 2010.  Compl. ¶ 26.  Hawkes's Complaint was filed within ninety (90) days of her receipt of the Dismissal and Notice of Rights letter.  Compl. ¶ 27.

## II.   LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness.  See Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  The court may consider factors including: (1) the plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) relative ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum.  Saleh v. Titan Corp., 361 F.Supp.2d 1152, 1156 (N.D. Cal. 2005) (citing Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); 28 U.S.C. § 1404(a)).

The movant bears the burden of justifying the transfer by a strong showing of inconvenience.  Decker Coal, 805 F.2d at 843.  The motion to transfer may be denied if the increased convenience to one party is offset by the added inconvenience to the other party.  Id.  As a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer.  See 28 U.S.C. § 1404(a).  However, the plaintiff's choice of forum has minimal value where the plaintiff is not a resident of the judicial district in which the suit commenced.  Armstrong v. Home Depot U.S.A., Inc., Case No. C–96–1323–SI, 1996 WL 382895, *1 (N.D. Cal. July 1, 1996) (citing Grubs v. Consolidated Freightways, Inc., 189 F.Supp. 404, 409 (D. Mont. 1960); Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)).

## III.   REQUEST FOR JUDICIAL NOTICE

HP has made an unopposed request for judicial notice of facts in support of its motion to transfer venue.  HP requests judicial notice of (1) cities located within the jurisdiction of the

United States District Court for the Eastern District of Virginia; (2) the median times from filing to disposition and from filing to trial, as of March 2011, for civil cases pending in the Northern District of California; and (3) the median times from filing to disposition and from filing to trial, as of March 2011, for civil cases pending in the Eastern District of Virginia.  See Supp. Request for Judicial Notice ("Supp. RJN") at ¶¶ 1-3, Docket No. 51.  The court concludes that these facts are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Accordingly, the court **GRANTS** HP's unopposed Supplemental Request for Judicial Notice.

## IV.   DISCUSSION

As an initial matter, the court addresses Hawkes's argument that this motion is premature because the court is unable to evaluate whether transfer is appropriate until further discovery has been conducted.  Hawkes's argument fails because "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary question of transfer."  McDonnell Douglas Corp. v. Polin, 429 F.2d 30, 30-31 (3d Cir. 1970).  Furthermore, the court has sufficient evidence before it to weigh the relevant factors in consideration of transfer.

28 U.S.C. § 1404(a) allows a district court to transfer "any civil action to any other district or division where it might have been brought."  Hawkes does not dispute that she could have brought this action in the transferee court.  The United States District Court for the Eastern District of Virginia has personal jurisdiction over HP, as HP maintains numerous facilities within that jurisdiction, including Alexandria, Virginia; Ashburn, Virginia; Chantilly, Virginia; Chesapeake, Virginia; Falls Church, Virginia; Herndon, Virginia; Sandston, Virginia; and Vienna, Virginia.  See Decl. of Kathy Reid ¶ 5, Docket No. 30.  Further, the Eastern District of Virginia has subject matter jurisdiction over Hawkes's action because her unlawful sex and age discrimination claims arise out of federal law.  See Compl. § 1.  Finally, venue is proper in the Eastern District of Virginia because "a substantial part of the events or omissions giving rise" to Hawkes's claims occurred within the Eastern District of Virginia.  28 U.S.C. § 1391(b)(2).

Case No. 5:10-CV-5957 EJD          5
ORDER GRANTING HEWLETT-PACKARD COMPANY'S MOTION FOR TRANSFER OF VENUE

Having established that Hawkes could have brought this action in the Eastern District of Virginia, the court weighs the relevant factors in consideration of transfer.

A. **Plaintiff's Choice of Forum**

In determining the weight given to Hawkes's choice of forum, "consideration must be given to the extent both of the defendant's business contacts within the chosen forum and of the plaintiff's contacts, including those relating to [her] cause of action." Hernandez v. U.S., Case No. C 07-05501 MEJ, 2009 WL 666947, at *3 (N.D. Cal. Mar. 13, 2009) (quoting Pac. Car & Foundry Co., 403 F.2d at 954). If a plaintiff does not reside within the chosen forum, the "plaintiff's choice of forum is accorded less weight" than the standard "substantial weight." Id. Further, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." Id. (quoting Pac. Car & Foundry Co., 403 F.2d at 954).

Because Hawkes does not reside in California, her choice of forum receives less weight. Further, she worked from her home in Virginia Beach, Virginia, which is within the jurisdiction of the Eastern District of Virginia. See Compl. ¶ 5. The operative facts of Hawkes's case occurred outside of California. See Compl. ¶¶ 9-21. Hawkes only has a casual connection to California in that (1) HP, her former employer, maintains its headquarters and human resources department in California; (2) her counsel contacted one of HP's employees who is based in California; and (3) one of the individuals responsible for filling one of the many positions she applied for resides in California. See Decl. of Peggy Hawkes ¶ 5, Docket No. 47; Decl. of Kathy Reid ¶¶ 4 and 6, Docket No. 30. Thus, although Hawkes chose this forum, her choice is given only minimal consideration.

B. **Convenience of the Parties**

The convenience of the parties is an important factor in determining whether to allow a transfer of venue. See Jarvis v. Marietta Corp., Case No. C 98–4951 MJJ, 1999 WL 638231, at *4 (N.D. Cal. Aug. 12, 1999).

The convenience of the parties favors pursuing this case in Virginia because Hawkes resides in Virginia and HP has offices in Virginia. Further, due to the location of the identified

Case No. 5:10-CV-5957 EJD                 6
ORDER GRANTING HEWLETT-PACKARD COMPANY'S MOTION FOR TRANSFER OF VENUE

witnesses, it is likely that litigating Hawkes's case in the Northern District of California will be more costly to the parties than in the Eastern District of Virginia. HP contends that "forcing these individuals to travel several thousand miles to the opposite coast" is unduly burdensome to HP. Docket No. 26 at 13:6-7. Although HP will "incur significant costs in providing transportation, accommodations, and meals for any employee witnesses, regardless of where this case is tried," HP argues that transferring this case would mitigate such costs and that the majority of employee witnesses would benefit from abbreviated travel schedules. Id. at 13:7-8. A transfer to the Eastern District of Virginia would not impose further undue burdens on the parties because Hawkes resides in Virginia and the majority of HP's current employees expected to testify at trial reside closer to Virginia than California  See Decl. of Kathy Reid ¶¶ 6-41, Docket No. 30; Corrected Decl. of Melissa M. Picco ¶ 7, Docket No. 65-1. Thus, the convenience of the parties favors pursuing this case in Virginia.

**C. Convenience of the Witnesses**

One of the most important factors in determining whether to grant a motion for transfer is the convenience of the witnesses. See Jarvis, 1999 WL 638231, at *4.

The majority of identified witnesses are East Coast residents. Of the forty (40) witnesses identified, eight (8) reside in Virginia and sixteen (16) reside nearer to Virginia than California. Six (6) of the identified witnesses reside in California and three (3) reside nearer to California than Virginia. Six (6) of the identified witnesses reside in the middle of the country. One (1) identified witness resides in Mexico. See Decl. of Kathy Reid ¶¶ 6-41, Docket No. 30; Corrected Decl. of Melissa M. Picco ¶ 7, Docket No. 65-1.

Also, if the parties find that they must subpoena non-party witnesses in order to compel their participation, only one identified potential witness (Riadh Dridi) is subject to the compulsory process of the Northern District of California. See Decl. of Kathy Reid ¶ 40, Docket No. 30; Fed R. Civ. P. 45(b)(2) (subpoena may only be served within the district of the action or, if outside the district, within 100 miles of the place of trial). Many of the potential witnesses identified are subject to the compulsory process of the Eastern District of Virginia. See Docket

No. 26 at 4:12-7:21; Decl. of Kathy Reid ¶¶ 6-41, Docket No. 30.  In light of the foregoing, the convenience of the witnesses weighs in favor of transfer to the Eastern District of Virginia.

### D. Relative Ease of Access to Evidence

"'[W]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden.'"  <u>Sierra Club v. U.S. Dept. of Agriculture</u>, Case No. 08-4248 SC, 2008 WL 5273726, at *4 (N.D. Cal. Dec. 19, 2008) (quoting <u>Van Slyke v. Capital One Bank</u>, 503 F.Supp.2d 1353, 1362 (N.D. Cal. June 7, 2007)).  While California and Virginia are nearly equidistant from Texas, Virginia is much closer to Georgia than is California.  Although the sources of proof might be slightly more accessible to both parties in the Eastern District of Virginia, neither party has shown that transporting electronically-stored documents creates a burden.  Therefore, this factor is neutral.

### E. Familiarity of Each Forum with the Applicable Law

Both parties admit that this court and the Eastern District of Virginia are equally familiar with Hawkes's claims.  <u>See</u> Docket No. 26 at 15:8-9; Docket No. 46 at 12:19-20.  Hawkes alleges two causes of action grounded in federal law: (1) unlawful sex discrimination and retaliation in violation of Title VII; and (2) unlawful age discrimination and retaliation in violation of the ADEA.  Compl. ¶ 1.  District courts are "equally capable of applying federal law."  <u>Allstar Mktg. Grp., LLC v. Your Store Online, Inc.</u>, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. Aug. 10, 2009).  Accordingly, this factor is neutral.

### F. Feasibility of Consolidation with Other Claims

This factor is not at issue in this case because there are no other claims to consolidate.  Neither party raises any arguments as to this factor.  Thus, this factor is neutral.

### G. Any Local Interest in the Controversy

The Eastern District of Virginia has a strong interest in this case because Hawkes resides within the jurisdiction of the Eastern District of Virginia and because a substantial portion of the transactions and events occurred within that jurisdiction.  It is also significant that California has no interest in applying and interpreting its own laws in this case, as Hawkes's claims arise from federal law.

Hawkes argues that "[i]f the decision to terminate Plaintiff in violation of her rights was made in Defendant's headquarters, the Northern District of California would indeed have a strong interest in this controversy, outweighing any interest of the Eastern District of Virginia stemming from Plaintiff having worked in her house there." Docket No. 46 at 13:3-7. The fact that HP maintains its headquarters within the Northern District of California, however, is insufficient to show that Hawkes's claims have a material link to the Northern District of California. Furthermore, Hawkes's allegation that she may have communicated with HP's California-based employees does not provide a significant connection between her case and the Northern District of California. Accordingly, this factor favors a transfer to the Eastern District of Virginia.

**H. Relative Court Congestion and Time of Trial in Each Forum**

A comparison of the median times from filing to disposition and from filing to trial in the Northern District of California and the Eastern District of Virginia suggests that the Eastern District of Virginia has a faster docket. See Supp. RJN at ¶¶ 2-3, Docket No. 51. Although Hawkes argues this district's ADR process may result in a speedier resolution of this case, the Eastern District of Virginia also provides opportunities for ADR and settlement. See E.D. Va. Civil L.R. 83-6. Thus, this factor weighs in favor of transfer.

### V.   CONCLUSION

On balance, considerations of convenience and fairness favor transferring this action to the Eastern District of Virginia. HP's Motion for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a), Docket No. 26, is hereby **GRANTED**. The Clerk shall transfer the file to the Eastern District of Virginia.

**IT IS SO ORDERED.**

Date: Hgdtwct{"37."4234

_____
EDWARD J. DAVILA
United States District Judge

Case No. 5:10-CV-5957 EJD            9
ORDER GRANTING HEWLETT-PACKARD COMPANY'S MOTION FOR TRANSFER OF VENUE